*Roberto Facey, Sr. v. Esther Facey*
No. 1183, Sept. Term, 2019
Opinion by Leahy, J.

**Enrolled Judgment > Revisory Power > Opening or Vacating Judgment > Grounds > Fraud**

In order to trigger the court's revisory power on account of fraud under Rule 2-535(b), "a movant must show extrinsic fraud, not intrinsic fraud." *Jones v. Rosenberg*, 178 Md. App. 54, 72 (2008). If extrinsic fraud is shown, a judgment is normally *voidable*, and a court's analysis must "proceed to determine whether the appellees acted in good faith and with ordinary diligence in seeking to have the judgment vacated and whether they have a meritorious defense to the underlying judgment." *Fleisher v. Fleisher Co.*, 60 Md. App. 565, 570 (1984).

**Enrolled Judgment > Revisory Power > Opening or Vacating Judgment > Grounds > Extrinsic Fraud**

Extrinsic fraud perpetrates an abuse of judicial process by preventing an adversarial trial and/or impacting the jurisdiction of the court. Fraud prevents an adversarial trial when it keeps a party ignorant of the action and prevents them from presenting their case, as in *Wells v. Wells*, 168 Md. App. 382, 399-99 (2006) and *Hinden v. Hinden,* 184 Md. 575, 583 (1945); or, as in *Fleisher v. Fleisher Co.*, 60 Md. App. 565, 571 (1984), the fraud prevents the actual dispute from being submitted to the fact finder at all. Extrinsic fraud can involve a false promise of compromise*,* or an attorney who fraudulently or without authority assumes to represent a party and connives at their defeat, s*ee United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878). Only an "intentionally deceptive artifice" can reach the level of extrinsic fraud. *Schwartz v. Merchant's Mortg. Co.*, 272 Md. 305, 308 (1974); *see also Payne v. Payne,* 97 Md. 678, 684-685 (1903).

**Enrolled Judgment > Revisory Power > Opening or Vacating Judgment > Grounds > Extrinsic Fraud**

Extrinsic fraud is normally collateral to the issues tried in the case in which the judgment is rendered. A court will not reopen a judgment because a party discovers fraud that took place during the trial or was contained within the trial, as, for example, the alleged conspiracy to commit perjury in *Schwartz*, 272 Md. at 309 and *Tabeling v. Tabeling*, 157 Md. 429, 434-435 (1929). Even when no trial has been held, if the fraud could have been discovered at trial, it is unlikely to be considered extrinsic. *See Pelletier v. Burson*, 213 Md. App. 284, 291 (2013); *Hresko v. Hresko*, 83 Md. App. 228, 236 (1990).

**Enrolled Judgment > Revisory Power > Opening or Vacating Judgment > Grounds > Extrinsic Fraud > Jurisdictional Impact**

Extrinsic fraud that impacts a court's jurisdiction must be fraud that either permits or prevents the court's "procurement of the judgment," as opposed to fraud that is "attendant upon the cause of action itself." *Mueller v. Payn*, 30 Md. App. 377, 389 (1976).

**Enrolled Judgment > Revisory Power > Opening or Vacating Judgment > Grounds > Intrinsic Fraud**

Intrinsic fraud relates to facts that were before the court in the original suit and could have been raised or exposed at the trial level. If a party could have discovered the fraud, but "by reason of its own neglect" it failed to exercise the "care in the preparation of the case as was required of it," the fraud will be intrinsic. *Md. Steel Co. of Sparrows Point v. Marney*, 91 Md. 360, 371 (1900); *see also Schwartz v. Merchant's Mortg. Co*, 272 Md. 305, 308 (1974); *Tabeling v. Tabeling*, 157 Md. 429, 434-435 (1929).

**Enrolled Judgment > Revisory Power > Opening or Vacating Judgment > Grounds > Intrinsic Fraud**

We hold that the circuit court did not err in determining that the fraud in this case was intrinsic and not extrinsic for three reasons: 1) it did not prevent an adversarial trial; 2) it pertained to facts contained within the original motions hearing; and 3) it did not impact the jurisdiction of the court.

**Enrolled Judgment > Revisory Power > Opening or Vacating Judgment > Grounds > Mistake**

It is "well settled that 'mistake,' as used in Rule 2-535(b), is limited to a jurisdictional error, such as where the Court lacks the power to enter the judgment." *Claibourne v. Willis*, 347 Md. 684, 692 (1997).

**Enrolled Judgment > Revisory Power > Opening or Vacating Judgment > Grounds > Mistake**

Indeed, Roberto admits that no jurisdictional mistake plagues the 2011 Judgment by conceding that it is not void because the circuit court had fundamental jurisdiction to enter it.

Circuit Court for Prince George's County
Case No. CAL11-11167

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1183

September Term, 2019

_____

ROBERTO FACEY, SR.

v.

ESTHER FACEY

_____

Leahy,
Gould,
Moylan, Charles E., Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Leahy, J.

_____

Filed: February 26, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Well over a century since the concepts of intrinsic and extrinsic fraud were first announced by the Supreme Court in *United States v. Throckmorton*, 98 U.S. 61 (1878),[1] many courts still find the concepts "extremely difficult to apply." 11 Wright & Miller's Fed. Prac. & Proc. Civ. § 2868 (3d ed. 2020). The distinction between intrinsic and extrinsic fraud has been regarded as "shadowy, uncertain, and somewhat arbitrary." *Howard v. Scott*, 125 S.W. 1158, 1166 (Mo. 1910). We are now drawn into this dusky thicket by the subterfuges surrounding the dissolution of the marriage between Roberto Facey, appellant, and Esther Facey, appellee.

In 2006, attendant to the break-up of the couple's nearly forty-year marriage, Roberto[2] executed a "Promissory and Confessed Judgment Note" in favor of Esther in the amount of $75,000 ("2006 Note"). In 2008 and 2009, before any payments were made on the 2006 Note, Esther suffered a series of debilitating strokes.

Soralla Facey de Otts, the couple's daughter, was responsible for taking care of her mother and, in May 2011, filed a "Complaint for Confession of Judgment" in the Circuit Court for Prince George's County based on the 2006 Note. Soralla's authority to file this action resided in a power of attorney purportedly executed by Esther in 2008 ("Power of Attorney"). In July 2011, the court issued a judgment against Roberto for $75,000 ("2011 Judgment"). Roberto responded with a "Motion to Open, Modify, or Vacate Confessed

---

[1] The Supreme Court acknowledged in *Throckmorton* that "[t]he principle and the distinction here taken was laid down as long ago as the year 1702 by the Lord Keeper in the High Court of Chancery, in the case of *Tovey* v. *Young*, Pr. Ch. 193." 98 U.S. at 67.

[2] In order to avoid confusion and meaning no disrespect, we refer to the parties and their children by their first names as they all share the same last name.

Judgment" based on allegations of duress, undue influence, misrepresentation, and the statute of limitations. The court denied Roberto's motion.

Over seven years later, in October 2018, Roberto challenged the 2011 Judgment again in a second **"Motion to Vacate Judgment and Dismiss Case."** This time, he claimed that the Power of Attorney relied upon by Soralla to bring the 2011 lawsuit was fraudulent. He alleged that the document had been backdated to appear as though it was executed prior to Esther's disability and that it did not contain Esther's authentic signature.

The circuit court held an evidentiary hearing on Roberto's motion on January 24, 2019. Several months later, the court issued an opinion and order denying the motion after finding that, while sufficient evidence was adduced establishing that the Power of Attorney was both fraudulently procured and a forgery, the forgery did not constitute extrinsic fraud triggering the court's revisory power under Maryland Rule 2-535(b).

Roberto noted this timely appeal and presents two questions which condense to the following:

> Did the trial court err in finding that the fraud in this case was intrinsic rather than extrinsic and, based on that determination, abuse its discretion in declining to exercise revisory power over the 2011 Judgment under Maryland Rule 2-535(b)?[3]

---

[3] Appellant's brief presents the following two questions:

"1. Did the trial court err in holding, as a matter of law that the use of a forged Power of Attorney obtained with fraudulent intent by Soralla Facey de Otts to invoke the jurisdiction of the Court was "intrinsic fraud" not subject to the Circuit Court's revisory power over a judgment after thirty days from its issue pursuant to Maryland Rule 2-535(b)?"

(Continued)

2

We affirm the circuit court's determination that the fraud in this case constituted intrinsic fraud and conclude that the circuit court did not abuse its discretion in declining to exercise its revisory power under Maryland Rule 2-535(b).[4]

## BACKGROUND

Esther and Roberto married on December 2, 1966 and had four children: Soralla, Jenetha, Roberto Jr. and Sabrina. On March 25, 2004, Roberto was granted an absolute divorce after the court granted his motion for default. Approximately one-and-a-half years later, Esther moved to vacate the default judgment. That case was resolved when the parties reached an agreement that was subsequently placed on the record. As a part of this agreement, on February 22, 2006, Roberto executed the 2006 Note in favor of Esther in the amount of $75,000.00.

In late 2008, Esther suffered a stroke, after which her adult children moved her from Florida to Maryland. She suffered a second stroke in late 2009.

On May 13, 2011, Soralla filed the underlying complaint for confessed judgment of the 2006 Note. The complaint named Esther as the plaintiff and stated that Soralla "brings this suit on behalf of her mother" pursuant to the Power of Attorney. The complaint alleged

---

"2. Did the trial court err in holding that the judgment in favor of the Plaintiff was not void *ab initio*, but barred by the doctrine of res judicata as a result of Roberto Facey's failure to raise the issue of the fraudulent Power of Attorney when he first filed his Motion to Vacate in 2011."

[4] Clearly, forgeries submitted to courts are not to be condoned. This case does not probe whether any forgery should be excused. Rather, this case requires that we analyze, against the deep-rooted policy in favor of the finality of judgments, whether fraud discovered post-judgment is of the variety that allows a court to exercise its revisory powers to reopen an enrolled judgment.

that subsequent to the granting of that Power of Attorney, "Esther Facey suffered a stroke and is no longer competent to manage her own affairs." The complaint further alleged that, despite demand, Roberto had not made any attempt to pay the amounts due.

The Power of Attorney was attached to the complaint as "Exhibit A." The document, allegedly witnessed on October 8, 2008, contained Esther's purported signature. On July 1, 2011, on the court's instruction, the clerk issued a "Notice of Entry of Judgment by Confession" against Roberto in the amount of $75,000.

**First Motion to Revise**

Roberto filed a "Motion to Open, Modify, or Vacate Confessed Judgment" on August 1, 2011. The motion included allegations of duress, undue influence, and misrepresentation. Roberto claimed that he executed the 2006 Note based on representations made by his son that his son would make payments on the note in consideration of his signature. Because Roberto's son had lost his business, he was unable to keep this promise. Additionally, Roberto accused his daughters, Soralla and Jenetha, of preparing the promissory note without his review, and then urging him "to quickly sign it to ensure" the divorce. Roberto requested a hearing on his motion.

Soralla filed an opposition, on Esther's behalf, in which she asserted that the 2006 Note was required to redress Roberto's fraud:

> [Roberto] obtained a default judgment of absolute divorce from [Esther] by means of a fraudulent affidavit which alleged that he could not find [Esther]. By obtaining his divorce from [Esther] by default in that manner, he was able to deprive [Esther] of her marital interest in his METRO pension. The confessed judgment note entered into herein was a settlement of the motion to vacate the default judgment of absolute divorce which would otherwise have reopened issues of marital property.

4

Ironically, and, it seems, with some augury, Soralla claimed that Roberto's representation in his motion to revise the 2011 Judgment—that he relied on his son's promise—was not meritorious because he failed to allege fraud:

> In any event, [Roberto] does not appear to argue that his son *defrauded* him by making *knowingly* false representations but, rather, that his son's business failed and he was unable to follow through.

(Emphasis in original). On November 17, 2011, a motions hearing was held on Roberto's motion. At the hearing, Roberto "acknowledged the existence of the [2006 Note]." The court denied Roberto's motion.

## Guardianship

Soralla and Jenetha petitioned the Circuit Court for Prince George's County to appoint them as co-guardians of the person and property of Esther in 2015. After a contested hearing on February 23, 2017, the court granted the guardianship petition.

## Second Round

On October 11, 2018, Roberto discharged another fraud claim in a second "Motion to Vacate Judgment and Dismiss Case." In this attack on the 2011 Judgment, Roberto claimed that the "Power of Attorney which conveyed the standing of Soralla Facey de Otts to bring the [2011] lawsuit and obtain the judgment was fraudulent" because it was prepared after Esther's stroke and had been "back dated to appear that it was executed prior to her disability." In support of this accusation, Roberto claimed that the document did not contain Esther's authentic signature and pointed out that the notary, Gary A. Rucker, had written on the document that his commission expired on January 10, 2013. Because, in

5

Maryland, "Notary Commissions are valid for four years," Roberto asserted that Mr. Rucker's commission "could not have been granted before January 10, 2009, a date after the alleged execution [on October 8, 2008] of the Power of Attorney."

Mr. Rucker admitted, in his affidavit appended to the motion, that he did not witness the execution of the Power of Attorney by Esther. He further attested that Soralla presented the Power of Attorney to him already signed and requested that he back date it to October 2008. He protested initially, but, because Soralla was an old friend, he eventually relented. According to Mr. Rucker, neither Esther nor the witness, Gerald Marshall, was present at the time of notarization.

Citing the court's revisory power over judgments under Maryland Rule 2-535(b) in the case of fraud, mistake, or irregularity, Roberto argued that the 2011 Judgment must be vacated because the Power of Attorney was forged. He averred that the fraudulent Power of Attorney constituted mistake and extrinsic fraud that "deprived the court of subject matter jurisdiction—Ms. Soralla Facey de Otts did not have standing to bring the Complaint on behalf of her mother, a disabled person."

On October 29, 2018, Soralla and Jenetha, as guardians of Esther's person and property, filed an opposition denying the allegations of fraud. On January 24, 2019, an evidentiary hearing on the motion was held in the circuit court before the Honorable Leo Green. The court requested supplemental memoranda and held another hearing in March.

6

The court's Opinion and Order, signed on April 23, 2019, was entered on June 27, 2019.[5]

## Circuit Court Opinion

The circuit court denied Roberto's Motion to Vacate Judgment and Dismiss Case, despite finding, among other things, that sufficient evidence was adduced to convince the judge that the Power of Attorney was both fraudulently procured and a forgery.[6] The opinion states:

> The court finds that the October 8, 2008 Power of Attorney was a writing, which by virtue of the power it was purported to grant, was a forgery. The court also finds that the signature on the October 8, 2008 Power of Attorney was not that of Ms. Facey[]; it was a false signature and was thus a

---

[5] Pending before the court were two related cases involving the same parties: 1) the Motion to Vacate Judgment and Dismiss Case in the underlying confessed judgment case (CAL11-111678); and 2) a separate complaint, brought by Esther's guardians, for Sale in Lieu of Partition of the parties' jointly-titled marital home (CAE-18-30593). The cases were consolidated on November 12, 2018. On June 27, 2019, the circuit court ordered that the former marital home be sold by a trustee and required Roberto to make the mortgage payments until the sale is complete. Roberto appealed this order. (CSA-REG-0709-2020).

[6] Judge Green recounted that, in Maryland, the term of a notary is four years and concluded: "[i]f the notary's commission, as stamped, expired on January 10, 2013, then the commission must have been granted on approximately January 10, 2009. The Power of Attorney was purportedly executed and notarized on October [8], 2008, months before the commission would have occurred." Also, based on Mr. Rucker's decision to invoke his constitutional right not to testify, the court resolved that "the Power of Attorney was executed on some other date than October 8, 2008 and was not executed by Ms. Facey." In reaching this conclusion, the judge also credited as "extremely [] believable" the testimony of Katherine Koppenhaver, who was qualified in the field of "Forensic Document Examiner." Ms. Koppenhaver compared a number of documents signed by Esther and rendered an opinion that the signature on the Power of Attorney was fraudulent and was not the signature of Esther. After reviewing the documents and comparing them with the Power of Attorney, the court observed that "even without the expert testimony, one can see that the signature is a poor and false copy of Ms. Facey's signature." The court recounted Soralla's contradictory testimony and determined that "[h]er testimony is not compelling and does little to convince the court that the Power of Attorney was executed properly."

7

forgery or is fraudulent. Finally, after consideration of the testimony and evidence presented, the court finds that the false signature on the Power of Attorney was rendered with the intent to defraud.

Having made the predicate factual determination that the Power of Attorney was both fraudulently procured and a forgery, the court turned to the vexing question of whether the fraud constituted extrinsic fraud triggering the court's revisory power under Md. Rule 2-535(b).[7]

Leading into his analysis, the judge observed that only extrinsic fraud is sufficient to reopen an enrolled judgment and then announced his determination that the forged Power of Attorney constituted intrinsic fraud. Explaining this ruling, the judge observed first that extrinsic fraud is collateral to the issues tried in a case in which a judgment is rendered, whereas intrinsic fraud pertains to the issues involved in the original action. Following an extensive recitation of the applicable caselaw, the judge reasoned that the fraud in this case was not extrinsic because,

> Mr. Facey was not foreclosed to contest the confessed judgment. In fact, he agreed to such a judgment in his divorce proceeding. He agreed that he signed the Confessed Judgment Note in the first Motion to Vacate hearing . . . . Mr. Facey clearly agreed to pay $75,000 to his former wife. While the Plaintiffs, or someone else, may have forged the Power of Attorney, that forgery was an example of intrinsic rather than extrinsic fraud. Thus, it did not foreclose Mr. Facey to contest the underlying obligation of the payment in settlement of the parties' divorce.
> While there is clear fraud in this case, it was not the type that enables the court to vacate a previous judgment.

---

[7] The judge briefly addressed the voidability of the 2011 Judgment, reviewing cases on the treatment of forged powers of attorney by Maryland courts such as *Scotch Bonnett Realty Corp. v. Matthews*, 417 Md. 570, 578 (2011) (citing *In re Baxter*, 320 B.R. 30 (Bankr. D.D.C. 2004)). Rather than articulate a conclusive finding about whether the 2011 Judgment was void ab initio, however, the court proceeded to analyze whether the fraud was intrinsic or extrinsic.

8

The judge concluded by holding that res judicata also barred Roberto from relitigating the validity of the 2011 Judgment because: 1) the second motion to revise involved the same parties; 2) the motion concerned matters that were or could have been litigated in the 2011 action; and 3) the 2011 Judgment constituted a final judgment on the merits.

## DISCUSSION

Where fraud, mistake, or irregularity are determined to exist, we normally review the circuit court's decision whether to grant a motion to revise a judgment pursuant to Maryland Rule 2-535(b) under an abuse of discretion standard. *See Peay v. Barnett,* 236 Md. App. 306, 315 (2018); *see also Wells v. Wells*, 168 Md. App. 382, 394 (2006). The existence of "a factual predicate of fraud, mistake, or irregularity necessary to support vacating a judgment under Rule 2-535(b)," however, is a question of law. *Wells*, 168 Md. at 394 (quoting *In re Adoption/Guardianship No. 93321055/CAD*, 344 Md. 458, 475 n.5, (1997)). We therefore review the trial court's decision regarding the existence of fraud, mistake, or irregularity without deference. "The burden of proof in establishing fraud, mistake, or irregularity is clear and convincing evidence." *Jones v. Rosenberg*, 178 Md. App. 54, 72 (2008).

## I.

### Parties' Contentions

In his opening brief, Roberto argued that the 2011 Judgment was void ab initio. He averred that judgments procured by parties without legal authority are null and void and

are subject to being vacated at any time. Therefore, he contended, because the forged Power of Attorney was a void instrument that conveyed no authority upon Soralla to file suit, the circuit court erred in failing to vacate the judgment because it was void. In his reply brief, however, Roberto admits that the 2011 Judgment is not void because the circuit court had fundamental jurisdiction to enter the judgment. Consequently, Roberto now urges that the 2011 Judgment is voidable, citing *LVNV Funding LLC v. Finch (Finch III)*, 463 Md. 586, 609 (2019), for the principle that voidable judgments may be attacked directly through the court's revisory power.

Roberto further contends that the court retained its revisory power in the underlying case because the use of a forged and fraudulently-intended power of attorney as the means to file a lawsuit constituted extrinsic fraud or a jurisdictional mistake. Roberto argues that the fraud was not intrinsic because the fraudulently-obtained Power of Attorney was not used as a mechanism to defeat a defense of Roberto's or to establish the validity of Esther's claim. Instead, he avers, it was used solely to give Soralla standing to file the case on her mother's behalf and, absent that act of fraud, no lawsuit could have been filed. Therefore, he concludes, the fraud was extrinsic.

Relying on *Chapman v. Kamara*, 356 Md. 426 (1999), Roberto also argues that the fraud effected a jurisdictional mistake. In *Chapman*, he explains, the court exercised its revisory power when an insurer's attorney entered an appearance and answer in a lawsuit without notice to or authorization from the insured defendant, which left the court without personal jurisdiction over the defendant. Similarly, Roberto avers, Esther never authorized Soralla to file suit for her, and the suit was filed under an instrument procured with

10

fraudulent intent. Therefore, Roberto insists, because the jurisdiction of the court was improperly invoked, mistake occurred.

Finally, based on the above, Roberto argues that the doctrine of res judicata does not preclude the present motion to vacate because this case involves extrinsic rather than intrinsic fraud. Res judicata, he insists, does not apply to judgments obtained by extrinsic fraud. He also argues that res judicata does not bar a direct attack on a judgment, such as a motion to vacate.

Esther, as expected, defends the trial court's determination that there was no extrinsic fraud and no other ground for the exercise of its revisory power over the 2011 Judgment. She maintains that fraud is extrinsic when it prevents an adversarial trial, but intrinsic when it is used within a trial during which the truth is distorted due to the fraud. Here, Esther notes, an adversarial trial was held in November 2011 regarding the Complaint for Confession of Judgment. Because a fair trial was held, even if the Power of Attorney was forged, it constituted intrinsic rather than extrinsic fraud. Esther also insists that forged documents are typically deemed intrinsic fraud and that an enrolled judgment will not be disturbed even though the judgment was based on a forged document.

Esther rejects Roberto's allegation that "mistake" existed in this case because "mistake," as contemplated by Maryland Rule 2-535(b), refers only to a jurisdictional mistake. Esther claims that the forged Power of Attorney does not affect the court's fundamental jurisdiction, defined as jurisdiction over both the parties and the subject matter, and therefore cannot justify relief from an enrolled judgment. Because the court had jurisdiction over both Roberto and the subject matter of the action, Esther avers,

11

Roberto cannot show that there was a mistake or a jurisdictional error sufficient to trigger the court's revisory power.

Lastly, Esther persists, res judicata bars Roberto from relitigating the motion to vacate the 2011 Judgment because it is not void. Consequently, contends Esther, it has res judicata effect because the parties to both actions are the same; the current and prior claims are identical; and there is a final judgment on the merits. Esther points out that, although he could have done so, Roberto did not raise the fraudulent nature of the Power of Attorney in his August 1, 2011 "Motion to Open, Modify, or Vacate Confessed Judgment" or at the November 2011 hearing. Therefore, because res judicata bars claims that a party could have, but did not, raise during the original proceedings, Esther avers that Roberto cannot relitigate the issue of the forged Power of Attorney.

## II.

### Legal Framework

### A. Revisory Power

The authority for the court's revisory power is found in parallel provisions of the Maryland Code and the Maryland Rules. Maryland Code (1974, 2013 Repl. Vol.), Courts and Judicial Proceedings Article ("CJP"), section 6-408 provides that:

> For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

Similarly, Maryland Rule 2-535(a) provides:

12

(a) **Generally.** On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2-534.

\* \* \*

(b) **Fraud, mistake, irregularity.** On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

As reflected in CJP § 6-408 and Maryland Rule 2-535(b), after the initial 30-day period, the judgment becomes enrolled and the court may revise the judgment only in narrow circumstances. *Finch III*, 463 Md. at 607. In order to trigger the revisory power on account of fraud under Rule 2-535(b), "a movant must show extrinsic fraud, not intrinsic fraud." *Jones*, 178 Md. App. at 72. If extrinsic fraud is shown, a judgment is normally *voidable*, and a court's analysis must "proceed to determine whether the appellees acted in good faith and with ordinary diligence in seeking to have the judgment vacated and whether they have a meritorious defense to the underlying judgment." *Fleisher v. Fleisher Co*., 60 Md. App. 565, 570 (1984). However, judgments that are void ab initio are a nullity—as for example, a judgment rendered by a court lacking fundamental jurisdiction—and are subject to both direct and collateral attack. *See Tucker v. Tucker*, 35 Md. App. 710, 712, (1977) (a judgment which is "void because of a lack of jurisdiction may be collaterally attacked at any time"). We recently explained in *Peay v. Barnett* that,

> equitable considerations of 'diligence and good faith' do not apply to 'jurisdictional mistakes' [under Rule 2-535(b)] that would render a default judgment void. This conclusion holds true for a mistake involving either a mistake of 'jurisdiction over the person—obtained by proper service of process,' or 'jurisdiction over the subject matter—the cause of action and the relief sought.'

236 Md. App. 306, 324-25 (2018) (citations omitted).

13

## B. Res Judicata and Collateral Attack of Enrolled Judgments

A collateral attack is an "'an attempt to impeach the judgment . . . before a court other than the one in which it was rendered, in an action other than that in which it was rendered[.]" *Klein v. Whitehead*, 40 Md. App. 1, 20 (1978) (citations omitted). Courts prohibit collateral attacks on enrolled judgments except in very specific circumstances. In *Finch III*, the Court of Appeals underscored this point. 463 Md. at 608. The case involved a limited liability company—LVNV Funding LLC ("LVNV")—that was not licensed as a debt collection agency at the time it obtained numerous default judgments in its favor from a debtor class represented by respondents Larry Finch and Henry Dorsey. *Id.* at 597-98. The debtors sought the "disgorgement of all sums LVNV received as a result of the judgments it improperly obtained and an injunction against any attempt to collect further amounts on those judgments." *Id*. at 598. On LVNV's motion, the circuit court dismissed the debtors' complaint on the ground that it amounted to an impermissible collateral attack on enrolled district court judgments. *Id*. After a series of appeals, in *Finch III*, the Court of Appeals agreed with the circuit court, holding that the debtors' attacks on grounds other than a lack of fundamental jurisdiction constituted impermissible collateral attacks on enrolled judgments. *Id*. at 611.

The Court of Appeals explained that "[j]udgments, by and large, are meant to be final. Even the court that rendered them has but a limited ability to open and revise them." *Id.* at 607. A court that renders a judgment "has discretionary revisory power over it for only 30 days," after which the judgment becomes enrolled and may be revised only "upon a finding of fraud, jurisdictional mistake or irregularity, which are narrowly construed."

14

*Id*. at 607-08 (citations omitted). Collateral attacks, the Court further expounded, are "even more severely limited and are permitted only when the court that rendered the judgment had no *jurisdiction* to do so." *Id*. at 608 (emphasis in original). When a court lacks jurisdiction to enter a "judicial decree or judgment," that judgment is void. *Id*. (quoting *Cnty. Comm'rs of Carroll Cnty. v. Carroll Craft Retail, Inc.*, 384 Md. 23, 44 (2004)). Jurisdiction, however, has a narrow meaning here. Judge Wilner, writing for the Court, elaborated that:

> [1] "The term 'jurisdiction' can have different meanings [ ] depending on the context in which it is used. It can refer to either the *power* of the court to render a valid decree, or the *propriety* of granting the relief sought." [cleaned up].
>
> [2] "It is only when the court lacks the first kind of jurisdiction which [ ] this Court termed 'fundamental jurisdiction' that its judgment is void." [cleaned up].
>
> [3] "[F]undamental jurisdiction refers to 'the power to act with regard to a subject matter which is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.' . . . It is the power that the law confers on a court to render judgments over a class of cases, within which a particular case may fall."
>
> [4] "Thus, the main inquiry in determining 'fundamental jurisdiction' is whether or not the court in question had general authority over the class of cases to which the case in question belongs."
>
> [5] "[A] court still retains its 'fundamental jurisdiction' though its ability to exercise that power may be 'interrupted' or circumscribed by statute or Maryland Rule. Indeed, this Court has repeatedly declined to hold void court or agency decisions that exceeded statutory limits but fell within the basic or fundamental jurisdiction of the court or agency."

*Id*. at 608-09 (quoting *Carroll Craft,* 384 Md. at 44-45). Enrolled civil judgments, then, will not be subject to collateral attack "on any ground other than the lack of fundamental

15

jurisdiction to render those judgments." *Id.* at 611. The Court concluded that, even though the unlicensed debt collection agency had "no legal authority to file [the collection actions]," the district court nevertheless had fundamental jurisdiction over these actions, meaning that the judgments were not void. *Id.*

To be sure, the Court's holding in *Finch III* does not protect judgments from direct attack. The Court was careful to note: "[a] claim that the court is without non-fundamental jurisdiction certainly may be raised as a defense in a pending action seeking the judgment or while the court retains revisory power over a judgment it has issued." *Id.* at 609.

Relatedly, the doctrine of res judicata, or claim preclusion, provides that "a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action." *Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 392 (2000); *see generally* Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* 53-57 (6th ed. 2018). In other words, res judicata means "'a thing adjudicated,' and generally indicates '[a]n affirmative defense barring the same parties from litigating a second lawsuit on the same claim[.]'" *Lizzi v. Wash. Metro. Area Transit Auth.*, 384 Md. 199, 206 (2004) (citations omitted). In Maryland, the requirements of res judicata are:

> 1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits.

16

*Colandrea*, 361 Md. at 392. "When these three elements are present, 'the first claim is merged into the judgment and bars the second claim.'" *Weatherly v. Great Coastal Exp. Co*., 164 Md. App. 354, 369 (2005). Additionally, because a claim

> encompasses all rights the plaintiff has to remedies against the defendant respecting all or any part of the transaction or series of connected transactions out of which the claim arises, the doctrine of res judicata bars subsequent litigation not only of what was decided in the original litigation of the claim but also of what could have been decided in that original litigation.

*Id*. (quoting *Boyd v. Bowen*, 145 Md. App. 635, 656 (2002)). Res judicata also bars claims based on facts that could have constituted a defense or counterclaim in a prior proceeding. *Green v. Ford Motor Credit Co*., 152 Md. App. 32, 44, 60 (2003) (holding that a separate claim under a different statute that could have been raised as a valid defense in the first suit was barred by res judicata); *see also Mostofi v. Midland Funding, LLC*, 223 Md. App. 687, 694-95 (2015) (holding that, because a judgment entered against a debtor in a collection case was not a void judgment, a new claim was barred by res judicata and the judgment could not be collaterally attacked in the subsequent action).

Here, Roberto contends that the underlying proceeding is a direct, rather than collateral, attack on the 2011 Judgment, as made plain by the very title of his "Motion to Vacate Judgment and Dismiss Case" under Maryland Rule 2-535(b). He contends that his direct attack is not a second lawsuit on the same claim and, therefore, is not precluded by res judicata.

Both parties misapply the doctrine of res judicata in their arguments. Roberto overlooks that once a final judgment is enrolled, res judicata applies to any subsequent actions in which the parties and the claims are the same. *See Anne Arundel Cnty. Bd. of*

17

*Educ. v. Norville,* 390 Md. 93, 110 (2005) (observing that res judicata pertains to the legal consequences of a judgment entered previously in the same case, and that, when applying res judicata, a court is concerned "simply with the final judgment and its concomitant consequences"). Esther, in turn, fails to appreciate that the very idea of Maryland Rule 2-535(b) is that the doctrine of res judicata does not bar the court's power to revise an enrolled judgment if it finds mistake, irregularity or, as we examine next, *extrinsic* fraud.[8]

---

[8] Neither the trial court's opinion nor the briefing on appeal address whether Roberto's claims that Soralla lacked the authority to sue on Esther's behalf or forged the Power of Attorney should have been raised as defenses under Maryland Rule 2-323. Section (a) of the rule states that "[e]very defense of law or fact to a claim for relief in a complaint, counterclaim, cross-claim, or third-party claim shall be asserted in an answer [and] . . . [t]he answer shall be stated in short and plain terms and shall contain the following: . . . (3) the defenses enumerated in sections (f) and (g) of this Rule. In turn, section (f) specifies that "when a party desires to raise an issue as to . . . (3) the authority of a party to sue or be sued in a representative capacity,[or]. . . (4) the averment of the execution of a written instrument, the party shall do so by negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge. **If not raised by negative averment, these matters are admitted for the purpose of the pending action**." (Emphasis added). Maryland Rule 2-323(g) requires a party to set forth by "separate defenses" the defense of fraud, which must be specially pleaded. *See Liberty Mut. Ins. Co. v. Ben Lewis Plumbing, Heating & Air Conditioning, Inc.,* 121 Md. App. 467, 477, *aff'd*, 354 Md. 452 (1999).

The question in this appeal is whether Roberto demonstrated that the Power of Attorney— i.e. its execution and Soralla's authority to sue under it—was extrinsic fraud. As our caselaw instructs, res judicata prevents a court from opening an enrolled judgment solely on the basis of intrinsic fraud. *See, e.g. Green*, 152 Md. App. at 60; *Hamilos v. Hamilos*, 279 Md. 99, 104-107 (1983). Therefore, more than 30 days after a judgment is entered, whether a negative averment was waived under Rule 2-323 is irrelevant where fraud is *intrinsic* because intrinsic fraud cannot operate to open or revise an *enrolled judgment*. Intrinsic fraud may be waived under Maryland Rule 2-323 when a court maintains "control over the judgment" within 30 days after entry. Md. Rule 2-535(a)*; cf. Thomas v. Cap. Med. Mgmt. Assoc., LLC*, 189 Md. App. 439, 455-457 (2009) (holding that appellants could have raised the negative averments of capacity to sue or be sued and the execution of a contract as defenses in their answer, but, because they did not, these defenses were waived).

(Continued)

## III.

## Extrinsic Fraud or Mistake

The 2011 Judgment is an enrolled judgment and is not void ab initio because the circuit court clearly had fundamental jurisdiction over Roberto and the subject matter.[9]

---

In most circumstances, however, extrinsic fraud cannot be waived because it constitutes "fraud practised directly upon the party seeking relief against the judgment or decree," that has "prevented [that party] from presenting all of his case to the court." *United States v. Throckmorton*, 98 U.S. 61, 66 (1878). In other words, where extrinsic fraud operates to open an enrolled judgment because a party was unaware of or unable to participate in the proceeding, then it is also true that that same party could not have waived a defense in that proceeding. We have not found a Maryland case that has squarely addressed this point, but other states have: *see Britten v. Hope Enter. Found. Inc.,* 163 A.3d 1029, 1037-1038 (Pa. Super. Ct. 2017) (holding that knowingly maintaining a wrongful death action on behalf of someone for whom that right of action does not exist is extrinsic fraud capable of vacating a judgment, and any challenge to appellant's capacity to bring such a suit is not waived); *Pentz v. Kuppinger*, 107 Cal. Rptr. 540, 595-598 (Cal Dist. Ct. App. 1973) (holding that a widow's refusal to amend her complaint to include specific allegations of extrinsic fraud was not fatal to her action, because her original complaint contained allegations sufficient to show extrinsic fraud); *In re Cassidy's Estate*, 270 P.2d 1079, 1086 (Ariz. 1954) (holding that even though fraud was not pled with particularity, this did not stop a party from seeking to revoke probate on the basis of fraud).

[9] The Maryland Code provides that:

> The circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal.

CJP § 1-501. Maryland Rule 2-611 governs confessed judgments in the circuit court. The rule reflects that the circuit court has the power to determine whether 1) a "complaint [for a confessed judgment] complies with the requirements of section (a) of [the] Rule" and 2) the "pleadings and papers demonstrate a factual and legal basis for entitlement to a confessed judgment." Md. Rule 2-611(a). Upon a finding that such requirements are met, "the court shall direct the clerk to enter the judgment." Md. Rule 2-611(b). Although no

(Continued)

The 30 days during which a court retains revisory power over a judgment under CJP § 6-408 and Maryland Rule 2-535(b) had long expired by the time Roberto moved to vacate the 2011 Judgment on October 11, 2018. The judgment could have been revised solely in the case of fraud, mistake, or irregularity. Md. Rule 2-535(b). As we explain, the trial court did not err in its determination that Roberto failed to demonstrate extrinsic fraud or mistake of the kind that renders enrolled judgments voidable under Maryland Rule 2-535(b).

## A. Fraud

### 1. Governing Precedents

The consternation surrounding the distinction between intrinsic and extrinsic fraud has led some commentators to suggest that it is a "troublesome and unsound" concept that "rest[s] on clouded and confused authorities." 11 Wright & Miller's Fed. Prac. & Proc. Civ. §§ 2861, 2868 (3d ed. 2020). Some of this confusion traces to the Supreme Court's ground-breaking decision in *United States v. Throckmorton*, 98 U.S. 61 (1878), in which the Court enunciated the *Throckmorton* rule allowing relief for "extrinsic" fraud collateral to the action but not "intrinsic" fraud related "to the subject matter of the action." *Id*. at § 2861. "With the precedents in so confusing a state, some lower courts appl[y] the

issues related to personal jurisdiction have been raised, we observe that the court had personal jurisdiction over Roberto, who is a Maryland resident and appears to have been properly served with process. *Chapman,* 356 Md. at 436.

*Throckmorton* rule, others [give] it 'token recognition,' and others reject[] it altogether."

*Id*.

Maryland courts have "firmly adhered" to the Supreme Court's original delineation between intrinsic and extrinsic fraud as announced in *Throckmorton*. *Bland v. Hammond*, 177 Md. App. 340, 351 (2007). We next examine the relevant precedent and conclude our analysis with a summary of precepts extrapolated from noteworthy cases to differentiate extrinsic from intrinsic fraud.

### a. The Federal Cornerstone: *United States v. Throckmorton*

In *Throckmorton,* the U.S. district attorney for the District of California sought a decree setting aside and declaring as null and void two decrees: the first by the board of commissioners of private land-claims in California concerning a land grant by the government of Mexico to a Mr. Richardson; and, the second, by the U.S. District Court affirming the commissioners' decree and Mr. Richardson's grant. 98 U.S. 61, 62 (1878). The district attorney argued that both decrees were obtained by fraud. *Id*.

The alleged fraud was that, when Mr. Richardson filed his petition before the board of commissioners, he did not have "sufficient evidence of an actual grant or concession to sustain his claim" to the land. *Id*. In order to remedy this defect, the district attorney averred, Mr. Richardson "made a visit to Mexico, and obtained from Micheltorena, former political chief of California, his signature . . . to a grant which was falsely and fraudulently antedated, so as to impose on the court the belief that it was made at a time when Micheltorena had power to make such grants in California." *Id*. The district attorney also

alleged that "in support of this simulated and false document [Mr. Richardson] [] procured and filed therewith the depositions of perjured witnesses." *Id.*

The Supreme Court refused to vacate the decrees. The Court acknowledged that fraud can "vitiate[] the most solemn contracts, documents, and even judgments," but noted that there is also

> no question that many rights originally founded in fraud become—by lapse of time, by the difficulty of proving the fraud, and by the protection which the law throws around rights once established by formal judicial proceedings in tribunals established by law, according to the methods of the law—no longer open to inquiry in the usual and ordinary methods.

*Id.* at 65. And, the Court suggested, there "are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy." *Id.* [10]

Nonetheless, the Court admitted, there is an "exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case." *Id.* In certain circumstances, the Court explained, a new suit can be "sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing," such as

> [w]here the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping

---

[10] The Court was referring to "*interest rei publicae, ut sit finis litium*, and *nemo debet bis vexari pro una et eadam causa.*" *Throckmorton*, 98 U.S. at 65. Respectively, these terms translate to "the general welfare requires an end to litigation" and "let no [person] be twice troubled for the same cause." *See* Comment, *The Rule Against Civil Actions for Perjury in Administrative Agency Proceedings: A Hobgoblin of Little Minds*, 131 U. Pa. L. Rev. 1209, 1212 (1983).

him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,— these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.

*Id*. 65-66.

The Court expounded that in cases in which a court has set aside a judgment, "relief has been granted, on the ground that, by some fraud practised directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court." *Id*. at 66. On the other hand, the Court noted, the "doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed." *Id*.

In essence, the Court explained, the acts for which a court will "on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, *extrinsic or collateral*, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered." *Id*. at 68 (emphasis added). The Court further observed:

That the mischief of retrying every case in which the judgment or decree rendered on false testimony given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.

23

*Id*. at 68-69.

Based on these principles, the Court pointed out that Mr. Richardson's petition was pending in litigation for more than five years before the decree granting him the land became final. *Id* at 63. The Court noted that all involved were aware of and would have been scrutinizing any issues with the grant because of the necessity of the grant to support Richardson's claim. *Id*. at 63-64. Accordingly, the Court held that, because the genuineness of the land grant from the former political chief was the only question pending before the board of commissioners and the district court for many years, to reopen the judgment would be "to retry, twenty years after the decision of these tribunals, the very matter which they tried, on the ground of fraud in the document on which the decree was made." *Id*. at 69. The Court refused to reopen the judgment, reasoning that such an action could lead to further litigation that would be "endless about the single question of the validity of this document." *Id*.

Many courts, including the federal courts in the Fourth Circuit, continue to recognize the distinction between intrinsic and extrinsic fraud.[11] *See Quarles v. Miller*, 86

---

[11] Federal Rule 60(b), although similar to Maryland Rule 2-535(b), allows courts to offer relief from enrolled judgments under broader circumstances than Rule 2-535(b). Fed. R. Civ. P. 60(b)(1)-(5); *see also Bland v. Hammond*, 177 Md. App. 340, 356 (2007) (observing that a "comparison of the grounds provided in Federal Rule 60(b) with those afforded by Maryland Rule 2-535(b) reveals that the revisory power of a Maryland court to vacate an enrolled judgment is significantly narrower than the relief available under Federal Rule 60(b)."). Federal courts also have the specific power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3); *see also Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244-248 (holding that litigation fraud perpetrated by a corporation and its lawyer constituted fraud on the court because it was a "deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit

(Continued)

24

F.3d 55, 57 (4th Cir. 1996); *Aetna Cas. & Sur. Co. v. Abbot*, 130 F. 2d 40, 43-44 (4th Cir.

1942); *Chrysler Corp. v. Superior Dodge, Inc.*, 83 F.R.D. 179, 186 (D. Md. 1979); *c.f.*

*Great Coastal Exp., Inc. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen &*

*Helpers of Am.*, 675 F.2d 1349, 1358 (4th Cir. 1982) (employing the intrinsic/extrinsic

fraud distinction but recognizing that the distinction is troubled). In *Superior Dodge*, the

federal district court observed that, "[e]mbodied in the Throckmorton distinction are two

conflicting concerns: (1) a deep-rooted policy in favor of the finality of judgments and (2)

---

Court of Appeals" and it was a "wrong against the institutions set up to protect and safeguard the public."). Cases in which federal courts exercise their revisory power as a result of "fraud on the court" are "typically confined to the most egregious cases, such as bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Great Coastal Exp., Inc.*, 675 F.2d at 1356; *see also In re Genesys Data Tech., Inc.*, 204 F. 3d 124, 130 (4th Cir. 2000); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995) (noting that fraud on the court is limited to fraud which seriously affects the integrity of the normal process of adjudication); *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157 (9th Cir. 2017), 1167-1168 (explaining that not all fraud is fraud on the court, and that fraud on the court includes only fraud that harms the integrity of the judicial process).

The phrase "fraud on the court" does not appear in Maryland Rule 2-535, but the concept appears to have been recognized by the Court of Appeals in dicta as one of fraud's "many guises," *Thomas v. Nadel*, 427 Md. 441, 452 (2012), be it intrinsic or extrinsic. *Compare Reid v. State,* 305 Md. 9, 16-17 (1985) (noting that bogus letters presented as evidence might be "fraud on the court" capable of revising a judgment, because, although such fraud is intrinsic, the mandate had not yet issued and the court could consider intrinsic fraud when revising a judgment that had not yet become enrolled), *with Hinden v. Hinden,* 184 Md. 575, 583 (1945) ("[B]y deliberately falsifying the address stated in the bill of complaint [husband] allegedly perpetrated a fraud upon both the [wife] and the [c]ourt."). This is consistent with the concept of fraud as expressed in *Throckmorton*, wherein the Supreme Court mentioned, as examples of extrinsic fraud, "where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side." 98 U.S. at 66.

25

the equitable consideration that it is manifestly unconscionable to permit enforcement of a judgment resting on after-discovered fraud." 83 F.R.D. at 186.

Maryland precedent instructs that 1) "fraud is extrinsic when it actually prevents an adversarial trial, but is intrinsic when it is employed during the course of the hearing which provides the forum for the truth to appear, albeit that truth was distorted by the complained of fraud," *Schwartz v. Merch. Mortg. Co.*, 272 Md. 305, 309 (1974); and 2) extrinsic fraud is "[f]raud which is collateral to the issues tried in the case where the judgment is rendered," *Hresko v. Hresko*, 83 Md. App. 228, 232 (1990). Application of these designations can be challenging. Accordingly, we survey the relevant decisional law in Maryland for further guidance.

### b. *Maryland Steel Co. of Sparrows Point v. Marney*

One of the earliest mentions of extrinsic fraud appeared in 1900 in *Maryland Steel Co. of Sparrows Point v. Marney*, 91 Md. 360 (1900). In *Marney*, an employer motioned to strike a judgment obtained by one of its employees, Mr. Marney, who recovered a judgment for $15,000 when he was injured at work and lost both his eyes. 91 Md. at 365. Mr. Marney claimed that his injury was the result of the "incompetency of some of his fellow servants, and the failure of [his employer] to provide suitable and safe machinery and appliances." *Id.*

The employer's motion to strike claimed that Mr. Marney's witnesses, who were mainly his coworkers, had conspired with and been bribed by Mr. Marney to perjure themselves and that the verdict was obtained as a result of their false testimony. *Id.* at 367. The motion was denied, and the employer appealed. *Id.* at 365.

26

On appeal, the Court of Appeals refused to vacate the enrolled judgment obtained by Mr. Marney. *Id*. at 378. The Court of Appeals acknowledged its revisory power, noting that courts possess "the power to set aside judgments . . . for fraud, deceit, surprise, or irregularity in obtaining them[.]" *Id*. at 366. This power, the Court qualified, is time-sensitive, and "after the lapse of the term there must be the most clear and satisfactory proof of the fraud, mistake, surprise, or other ground relied on, and the party seeking such relief must appear to have acted in good faith, and with proper diligence." *Id*. Further, the Court added "[t]he party seeking relief must show that the fraud . . . is 'unmixed with any fault or negligence in himself.'" *Id*. at 370.

In Mr. Marney's case, the Court explained, because the claim was clearly based on the negligence of the employer, and the employer was perfectly aware of the allegations against it, the employer had "ample opportunity to present its defense" at the first trial. *Id*. at 378. The record showed no attempt by the employer to deny that Mr. Marney's fellow employees were incompetent. *Id.* at 371. The employer had no excuse to claim that it was not aware that the witness testimony was false if "by reason of its own neglect" it failed to exercise the "care in the preparation of the case as was required of it." *Id.* at 371. "Such lack of diligence," the Court held, "cannot now be rewarded by giving it the aid of a court of equity . . . in setting aside a judgment which was obtained by its own neglect, if what it now asserts is correct as to the methods adopted by [Mr. Marney]." *Id*. at 372.

Citing *Throckmorton* and *Pico v. Cohn*, 25 Pac. 970 (Cal. 1891), the Court instructed that the prominence of the finality of judgments is such that "courts have always been reluctant to disturb judgments rendered in the due course of their proceedings, and

27

have for the most part held that the mere fact that a judgment was obtained through the perjury of a witness is not sufficient to justify them in setting it aside." *Id.* at 373. Judgments will only be vacated, the Court held, in the case of extrinsic or collateral frauds, such as when "'it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party by some extrinsic or collateral fraud has prevented a fair submission of the controversy.'" *Id.* at 374 (quoting *Pico*, 25 Pac. at 971). Quoting *Pico*, the Court adopted the view that

> when [an unsuccessful party] has a trial he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way; that the very object of the trial is, if possible, to ascertain the truth from the conflict of the evidence, and that necessarily the truth or falsity of the testimony must be determined in deciding the issue. The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy. *The wrong in such a case is, of course, a most grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice, and so the rule is that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for, if this could be done once, it could be done again and again, ad infinitum.*

*Id.* at 374-375 (quoting *Pico*, 25 Pac. at 971-72) (emphasis in original). [12] *See also Payne v. Payne,* 97 Md. 678, 684-685 (1903) (refusing to vacate a judgment for extrinsic fraud

---

[12] Before the adoption of Maryland Rule 2-535 in 1984, *see* Maryland Register, Vol. 11, Issue 9, Part II, S43 (April 27, 1984), or its predecessor, Maryland Rule 625a, adopted in 1956, equity courts exercised extended revisory powers over enrolled judgments. *See Hughes v. Beltway Homes, Inc.*, 276 Md. 382, 384-386 (1975). The general rule was that,

(Continued)

when most of the matters raised by petitioner were previously before the trial court, and where the alleged fraud on a matter that was not before the trial court was not sufficiently intentional or positive to justify reopening the decree).

### c. *Tabeling v. Tabeling*

Almost three decades later, the Court of Appeals considered whether the fraud alleged in *Tabeling v. Tabeling* warranted setting aside a judgment of divorce that was obtained on the ground of adultery. 157 Md. 429, 430 (1929). The husband in *Tabeling* obtained a divorce decree following a trial in the Circuit Court Number 2 of Baltimore City. Several months later, his former wife filed a petition asking the court to strike the divorce decree because it was obtained by conspiracy, perjury, and fraud. *Id.* Specifically,

---

> after the enrollment of a decree in chancery, in the absence of fraud, surprise, or irregularity in its procurement, a substantial error in it will not be corrected or a rehearing of the case granted upon a mere petition, a bill of review or an original bill for fraud being the appropriate form of proceeding in such cases.

*Foxwell v. Foxwell*, 122 Md. 263, 272 (1914). There was, however, an exception to this rule in equity in "cases not heard on their merits, and in which it [was] alleged that the decree was entered by mistake or surprise, or under such circumstances as shall satisfy the court, in the exercise of a sound discretion, that the enrollment ought to be discharged and the decree set aside." *Id.* Once law and equity were pronounced as "stand[ing] on the same footing under Rule 625a," this exception was no longer recognized. *Hughes*, 276 Md. at 386. Therefore, Maryland Rule 625a required that "[f]raud, mistake or irregularity must be seasonably shown before a judgment may be set aside" after the initial 30-day revisory period has passed. *Id.* Some cases that predate Maryland Rule 625a, rely on grounds recognized formerly in equity. They feature, for example, courts exercising revisory power over judgments in cases in which fraud may have been present, but, because the case was not heard on its merits, the existence of fraud was not clearly cited as the reason for reopening the judgment. *See, e.g., Falck v. Chadwick*, 190 Md. 461, 466-467 (1948) (holding that an adoption finalization that was not heard on the merits could be reopened because it was unclear whether the natural parents had voluntarily given their consent to the adoption).

29

she averred that the husband and his witnesses had conspired to trick her into committing adultery. *Id*. Unlike Shakespeare's Bertram and Helena, things did not end well for this husband and wife.[13] The trial court granted the wife's petition and vacated the decree. *Id*. The husband appealed, arguing that the decree was enrolled and could not be disturbed. *Id*. at 432.

The Court of Appeals agreed with the husband. *Id*. at 436-437. Relying on *Maryland Steel Co. of Sparrows Point v. Marney*, the Court noted that, "[i]f the facts set up in the petition were before the court in the first instance, and the court was not deceived or misled into the entry of the decree, it will not be disturbed." *Id*. at 433. The Court determined that the trial court was neither misled nor deceived in the original divorce case. *Id*. The Court noted that the original divorce decree was heard on the merits, and then the wife appealed the original decree, citing her husband's fraud, but subsequently dropped her appeal. *Id.* The Court also pointed out that all the facts and evidence alleged by the wife in her petition to vacate were present before the court in the original divorce matter, and that any argument regarding the wife's adultery or the perjury and conspiracy of the husband's witnesses went to the merits of the case and could have been made during the original proceedings. *Id*. at 434-435. Even though the wife abandoned her appeal to pursue a criminal investigation into her husband and his witnesses, no criminal proceedings were taken nor any convictions obtained, and, therefore, the Court held, the original divorce decree should not have been disturbed. *Id*. at 436.

---

[13] *See* William Shakespeare, *All's Well that Ends Well*, Act 5, scene 3.

30

#### d. *Hinden v. Hinden*

In *Hinden v. Hinden*, the Court of Appeals again considered whether a husband's tactics in obtaining a divorce decree amounted to fraud sufficient to trigger the court's revisory powers. 184 Md. 575, 576 (1945). In 1944, the wife moved to set aside a divorce decree obtained by her husband in 1943 in the Circuit Court Number 2 of Baltimore City. *Id*. She averred that the divorce decree had been granted without her knowledge. *Id*. In his 1943 complaint, the husband stated that he was and had been a resident of Baltimore City for more than one year prior to the filing of his complaint and that, last he knew, the wife was a resident of 3110 Tulip Street in Philadelphia, Pennsylvania. *Id*. He also claimed that he sent notice of the complaint to the wife at that address, but that his letter was returned by the post office "'undelivered.'" *Id*. at 576-77.

In her petition to set aside the divorce decree, the wife claimed that the court did not have jurisdiction to entertain the husband's complaint and that the "said decree of divorce was obtained by fraud and surprise practiced upon the [wife]" and the court. *Id*. at 577. In support of these claims, the wife argued that: 1) neither of the parties had lived in Maryland for one year prior to the husband's complaint; and 2) the husband "stated under oath" in his complaint "a fictitious and incorrect street address" for the wife, even though he was perfectly aware that the wife lived at 5642 Arlington Street, Philadelphia, "thereby causing her to receive no notice of the divorce suit." *Id*.

The husband filed a demurrer to the wife's petition, denying any fraud, claiming that the wife had "slumber[ed] on her rights," and noting that the decree had been enrolled for more than a year. *Id*. at 578. The Court overruled this demurrer. *Id*. On appeal, the

Court of Appeals agreed with the trial court, explaining that the facts alleged were "sufficient, if proved, to entitle the [wife] [] to the relief prayed[,]" because wife's petition alleged "fraud in obtaining the decree of divorce now under attack." *Id*. at 578-579, 583. The Court expounded, that if the facts alleged were proved,

> the case would be that of a husband who abandoned his wife in Pennsylvania, brought suit for divorce against her in Maryland before he had resided [t]here for the required statutory period, gave a knowingly fictitious and false address in the bill of complaint which he swore to, concealed knowledge of the divorce proceedings from her and then procured an ex parte decree against her.

*Id*. at 583. The Court held that this was "clearly the kind of a case which a court of equity will not dispose of by way of demurrer, but is one which calls for a full and direct answer to the allegations of fraud." *Id*. The Court affirmed the trial court's decision because the husband "not only did not give the [wife] knowledge of the attempted exercise of jurisdiction by the [c]ourt and an opportunity to be heard, but by deliberately falsifying the address stated in the bill of complaint he allegedly perpetrated a fraud upon both the [wife] and the [c]ourt." *Id.*; *see also Wells v. Wells*, 168 Md. App. 382, 396-400 (2006) (holding that divorce granted by default judgment was obtained by extrinsic fraud and could be vacated if wife could prove that husband prevented her participation at trial by misleading her about the status of their relationship, misrepresenting court documents, and intercepting notice of divorce proceedings).

### e. *Schwartz v. Merchant's Mortgage Company*

In the oft-cited case of *Schwartz v. Merchant's Mortgage Co*., the Court of Appeals delved into the distinction between intrinsic and extrinsic fraud. 272 Md. 305, 307 (1974).

32

Like the petitioners in *Marney* and *Tabeling*, in *Schwartz*, the petitioner tried to attack an enrolled judgment by alleging that, prior to trial, the respondents entered into a conspiracy that was then "executed by [the respondents] during the course of the proceedings through the commission of perjury and the suppression of material evidence, which brought about an erroneous result." *Id*. at 307. The Court of Appeals refused to vacate the judgment, explaining that petitioner had "not set forth that type of intentionally deceptive artifice which this Court has consistently required in order to authorize the reopening of an enrolled decree." *Id*. at 308. The Court instructed, based on *Throckmorton* and "a firm foundation of Maryland cases which go back at least to the turn of the [twentieth] century," that,

> an enrolled decree will not be vacated even though obtained by the use of forged documents, perjured testimony, or any other frauds which are *'intrinsic'* to the trial of the case itself. Underlying this long settled rule is the principle that, once parties have had the opportunity to present before a court a matter for investigation and determination, and once the decision has been rendered and the litigants, if they so choose, have exhausted every means of reviewing it, the public policy of this State demands that there be an end to that litigation.

*Id*. (emphasis added).

The Court reiterated that "[t]his policy favoring finality and conclusiveness can be outweighed only by a showing 'that the jurisdiction of the court has been imposed upon, or that the prevailing party, by *some extrinsic or collateral fraud*, has prevented a fair submission of the controversy.'" *Id*. at 308-09 (emphasis added) (quoting *Pico*, 25 Pac. at 971). The Court confirmed that "fraud is *extrinsic* when it actually prevents an adversarial trial, but is *intrinsic* when it is employed during the course of the hearing which provides the forum for the truth to appear, albeit that truth was distorted by the complained of fraud."

33

*Id.* at 309 (emphasis added).  The rationale for this distinction, the Court noted, is that "the very object of the trial is to assess the truth or falsity of the often-conflicting testimony and documents presented."  *Id.*  The court concluded that the "fact that the fraud is the product of a conspiracy does not alter its nature—that is whether it is intrinsic or extrinsic to the trial," even if the conspiracy was entered into before trial.  *Id.* at 310.

### f.  *Mueller v. Payn*

In determining whether a default judgment entered in Missouri against Maryland defendants was entitled to full faith and credit in Maryland, this Court examined defendants' attacks on the foreign judgment, including that it was obtained by fraud.  *Mueller v. Payn*, 30 Md. App. 377, 378, 383 (1976).  In *Mueller,* the appellee, a resident of Missouri, obtained a judgment in a Missouri circuit court to recover an outstanding contractual payment from appellants, who were residents of Maryland.  30 Md. App. at 379.  Appellee then filed a declaration in the Circuit Court for Prince George's County seeking enforcement of the Missouri judgment.  *Id.*  Appellants responded to the declaration by claiming that, among other things, "the Missouri court lacked personal and subject matter jurisdiction, [and] that the foreign judgment was obtained by fraud[.]"  *Id.* at 379.  Appellee then moved for summary judgment, which was granted.  *Id.*  Appellants appealed, claiming that, because of the alleged fraud, the trial court "improperly granted the Missouri judgment full faith and credit."  *Id.* at 378, 385.

This Court disagreed with the appellants.  *Id.* at 390.  Our predecessors pointed out that appellants' claims of fraud related to the formation of the contract between appellants and appellee and "not to the obtaining of the judgment."  *Id.* at 388.  Appellants believed

34

that appellee misrepresented his expertise in a particular field, and then relied on his allegedly false claim to enter into the contract with appellee. *Id*. at 389.

The Court explained that the only type of fraud that can "result in a denial of full faith and credit is . . . 'extrinsic' and amounts to a fraud on the court, as where the fraud goes to the question of jurisdiction, . . . or prevents the defeated party from fully and fairly presenting his case." *Id*. at 388. (citations omitted). Fraud "such as that indicated here, concerning the merits of the action," the Court held, "must be raised in the court where the judgment is rendered." *Id.* "Such 'intrinsic' fraud, even if proven, does not permit denial of full faith and credit," because it is "*fraud attendant upon the cause of action itself*" rather than "*fraud in the procurement of the judgment*." *Id*. (emphasis added) (citations omitted); *cf. Oxendine v. SLM Cap. Corp*., 172 Md. App. 478, 494 (2007) (explaining that, if proved, fraud conveying personal jurisdiction over two defendants in a foreign court would likely be extrinsic fraud). Fraud, the Court reiterated, is "'*extrinsic when it actually prevents an adversarial trial, but is intrinsic when it is employed during the course of the hearing which provides the forum for the truth to appear, albeit that truth was distorted by the complained of fraud*.'" *Mueller,* 30 Md. App. at 389 (emphasis added) (quoting *Schwartz*, 272 Md. at 309).

### g. *Fleisher v. Fleisher Co*.

In 1984, this Court considered an appeal from the decision by the circuit court, exercising its revisory power, to vacate two confessed judgments after finding extrinsic fraud. *Fleisher v. Fleisher Co*., 60 Md. App. 565, 568 (1984). In that case*,* Martin Fleisher was appointed attorney-in-fact for his disabled brother Max, who owned and operated a

department store in Maryland. *Id*. at 569. Max conducted his business through two wholly-owned corporations, the Fleisher Company and the Donkey Corporation. *Id*. Martin served as officer and director for both corporations. *Id*. Martin, as attorney-in-fact to Max, and on behalf of The Fleisher Company and the Donkey Corporation respectively, executed two confessed judgment notes in favor of "'Naron, Wagner & Voslow, Chartered and Martin D. Fleisher,' each in the amount of $150,000." *Id*. These notes were prepared by the corporate attorney "at the request of the corporate accounting firm, Naron, Wagner & Voslow, Chartered, and Martin Fleisher, the named beneficiaries." *Id*. Martin was served with process in his capacity as attorney-in-fact, and the judgments were entered. *Id*. at 570.

Max died a few years later. *Id*. After his daughters were appointed personal representatives of his estate, they discovered the existence of the confessed judgments and liens and filed an action to have the judgments set aside. *Id*. The circuit court found extrinsic fraud sufficient to vacate the confessed judgments. *Id*. at 569.

We affirmed, reasoning that the "confessed judgments were for the benefit of Martin Fleisher, were executed by Martin Fleisher in his capacity as attorney-in-fact for Max [] and his status as an officer of the corporation, and were served upon the two corporations through Martin Fleisher as resident agent. Thus, Martin was involved in each step of the process, changing roles as the circumstances warranted." *Id*. at 572. Further, the attorney for the corporation (and Martin) drafted the notes, filed them in court, and then decided that no defenses to them should be entered. *Id*.

We observed that the fact Max had not been informed of the notes was "not necessarily significant because of his physical state." *Id*. Nonetheless, we determined that,

36

because the "only persons aware of these transactions were the three interested parties, Martin Fleisher, Mr. Wagner of the accounting firm, and the attorney," the circuit court had "ample basis upon which to find the requisite extrinsic fraud to vacate the confessed judgments." *Id*. In other words, because of Martin's devious actions, Max's personal representatives were unable to discover or challenge the confessed judgment actions; in this case, the "*fraud prevented the actual dispute from being submitted to the fact finder at all*." *Id*. at 571 (emphasis added).

### h. *Hresko v. Hresko*

In *Hresko v. Hresko*, the husband moved to open and revise his divorce decree, claiming that his former wife concealed an unknown sum of money from him at the time they entered into the separation and property settlement agreement underlying the decree. 83 Md. App. 228, 229 (1990). The agreement set out, among other things, the wife's option to buy out the husband's interest in the family home. *Id*. at 230.

The wife had filed for divorce after the agreement was signed. *Id*. Husband did not contest the divorce, and a decree was entered by the circuit court. *Id*. The next year, the wife exercised her option to buy out the husband's interest in the family home, paying him $30,000 in cash. *Id*. The husband was unaware that his former wife had such a large sum of money at her disposal and "became convinced that a fraud had been perpetrated against him during the [] negotiations that led to the property settlement." *Id*. He filed a motion to revise the judgment and rescind the agreement. *Id*. at 230. The wife filed a motion to dismiss, which was granted. *Id*. at 231.

37

On appeal before this Court, husband argued that the wife's "fraudulent representations [about her financial assets] were extrinsic to the subsequent divorce action because they took place over two years before its inception and served to prevent [him] from taking advantage of his right to an adversarial proceeding." *Id*. at 233. We held that the alleged concealment of funds was, at most, intrinsic fraud and affirmed. *Id*. at 232.

We reiterated that extrinsic fraud exists when it prevents an adversarial trial and that, "in determining whether or not extrinsic fraud exists, the question is not whether the fraud operated to cause the trier of fact to reach an unjust conclusion, but whether the fraud prevented the actual dispute from being submitted to the fact finder at all." *Id*. Based on these principles, we held that "[m]isrepresentations or concealment of assets made in negotiations leading to a voluntary separation and property settlement agreement later incorporated into a divorce decree represent matters intrinsic to the trial itself." *Id*. at 235. We observed that the property settlement agreement was submitted by both parties to the court for incorporation into the divorce decree and that the husband had "every opportunity to examine these representations through discovery methods or in court." *Id*. at 235-236. Therefore, we held there was no extrinsic fraud because the husband chose to file an uncontested answer and permitted the matter to go to judgment. *Id*. at 236. Public policy, we concluded, "demands an end to litigation once the parties have had an opportunity to present in court a matter for determination, the decision has been rendered, and the litigants afforded every opportunity for review." *Id*.; *see also Hamilos v. Hamilos*, 297 Md. 99, 105-106 (1983) (allegations that a husband coerced his wife into signing a separation agreement and obtaining to a divorce did not constitute extrinsic fraud).

38

### i. *Das v. Das*

Ten years later, in 2000, we held that a husband failed to demonstrate extrinsic fraud after his wife served him with a complaint for divorce at his former address. In *Das v. Das*, the husband filed a motion to vacate a divorce decree obtained by his wife after the court granted her motion for default judgment. 133 Md. App. 1, 9-11 (2000). Months earlier, the wife filed for divorce and served the husband at his Maryland address. *Id*. at 7. Shortly thereafter, the husband fled to India without the wife's knowledge or consent, taking the parties' minor child with him. *Id*. at 7-8. Because she did not know where he went, the wife no longer had an address for the husband and continued to serve him at his Maryland address. *Id*. at 7-9. After the court granted the wife a divorce, the husband responded with a motion to vacate, which was denied. *Id*. at 10-11. He appealed, claiming, among other things, that "the judgment should be vacated because Wife's counsel engaged in extrinsic fraud when she requested an Order of Default Judgment using Husband's [Maryland] address as his 'last known address,'" which prevented him from "presenting his own favorable evidence." *Id*. at 16.

On appeal, we determined that the husband's "own actions to evade the reach of the court and eloign his minor child in another land—including his failure to apprise the court of his change of address once this action began—were . . . the predominant causes of his inability to put on his case." *Id*. at 17. The husband, we explained, left the country in the midst of ongoing litigation. *Id*. at 19. We pointed out that the court's rules on a litigant's duties are clear: 1) a litigant has a duty to "keep himself informed as to the progress of a pending case"; and 2) a litigant has a continuing obligation to give the court his most recent

39

address.  *Id.*  We determined that, when the husband fled the country and did not inform the court of his new address, he "caused his misfortunes."  *Id.* at 19-20.

Furthermore, we stated, it was reasonable and not deliberately deceptive for the wife to continue using the husband's Maryland address for service, even though the minor child's attorney informed the court of an address in India where the husband and child might be.  *Id.* at 21.  We reasoned that this address was not confirmed, was not adopted by the court, and, even the husband's father, who was the husband's power of attorney, was not sure of its accuracy.  *Id.*  Accordingly, even though the husband was not served at his then-current address, we held that he did not establish by clear and convincing evidence that there was extrinsic fraud capable of reopening the default judgment.  *Id.* at 19-23.

### j.  *Bland v. Hammond*

Moving out of the family law arena, we next examined *Bland v. Hammond*, in which a plaintiff appealed the denial of her motion to vacate the dismissal of her claim, contending that her attorney negligently failed to pursue the action while misleading her to believe that he continued to represent her.  177 Md. App. 340, 344-346 (2007).  The plaintiff hired an attorney to represent her in a tort claim.  *Id.* at 344.  The attorney filed a complaint on her behalf but then consistently failed to respond to requests for discovery and responded inadequately to two different motions for sanctions.  *Id.*  The court dismissed the plaintiff's suit without prejudice as a sanction for failing to provide discovery.  *Id.*  Throughout the process, the plaintiff's attorney failed to communicate with her.  *Id.* at 345-347.

Eventually, the plaintiff learned that her claim had been dismissed and that her attorney had been suspended by the Court of Appeals.  *Id.* at 346.  Until she discovered the

fate of her claim, her attorney "continued to mislead [her] to believe that he was still actively engaged in representing her." *Id.* The plaintiff filed a motion to vacate the dismissal, contending that her attorney's conduct "constituted extrinsic fraud that entitled her to set aside the . . . judgment." *Id.* Her motion was denied. *Id.* at 346.

On appeal, we affirmed the decision of the circuit court. *Id.* at 355. We agreed that the attorney's conduct after the dismissal of the plaintiff's action, including misleading the plaintiff to believe that he was still representing her, amounted to fraud. *Id.* at 353. But, we explained that the "definition of extrinsic fraud, as originally pronounced in *Throckmorton*, control[ed] our conclusion" and that, although the plaintiff did not have the opportunity to present her case, this was not due to, for example, the "opposing party deliberately mislead[ing] her about the status of her lawsuit" or her attorney "conniv[ing] to defeat her claim or collud[ing] with opposing counsel." *Id.* at 353-354. Although we admitted that there was never "a 'real contest in the trial . . . of the case,' . . . that failure [was] not because of a fraud perpetrated upon [the plaintiff] or the court; rather the failure [lay] in [the attorney's] negligent representation of her resulting in the dismissal of her suit." *Id.* We held that there was no extrinsic fraud to justify reopening the enrolled judgment. *Id.* at 355.

### k. *Pelletier v. Burson*

Finally, in 2013, we briefly considered whether fraudulent signatures on affidavits in a foreclosure sale constituted extrinsic fraud. *Pelletier v. Burson*, 213 Md. App. 284, 287 (2013). Approximately 65 days after the foreclosure proceeding was closed, Ms. Pelletier filed a motion to dismiss and a request for a hearing, alleging that "the signatures

41

of the substitute trustees were fraudulent [and] the lender bank acted in bad faith[.]" *Id*. at 288. The circuit court denied her motions without a hearing and refused to reopen the judgment under 2-535(b), explaining that "'even if the fraudulent affidavits [appellant] complains of were viewed as intentionally false representations, [they did] not amount to the required extrinsic fraud [under Maryland Rule 2-535(b)].'" *Id*. at 288-89.

Ms. Pelletier appealed, and we affirmed the judgment of the circuit court. *Id*. She contended that the "'the affidavits attached to the Order to Docket [suit] were fraudulently signed and were 'robo-signed' and that she was not aware of the fraud until after the sale date." *Id.* at 289. We held that the alleged fraud was intrinsic, rather than extrinsic. *Id*. We noted that, although no hearing was held, the "alleged fraud did not prevent an adversarial trial," and that, even if a hearing had taken place, the affidavits "would have been contained within the trial itself." *Id*. at 291. We concluded that fraud sufficient to reopen a judgment must be narrowly construed, and that, once parties have had "the opportunity to present before a court a matter for investigation and determination, and once the decision has been rendered and the litigants, if they so choose, have exhausted every means of reviewing it, the public policy of this State demands that there be an end to that litigation." *Id*. at 291 (quoting *Jones v. Rosenberg*, 178 Md. App. 54, 73 (2008)); *see also Green v. Ford Motor Credit Co.*, 152 Md. App. 32, 49 (2003) (holding that an alleged misrepresentation in a court pleading related to a lender's compliance with statutory requirements for a Notice of Repossession did not constitute extrinsic fraud).

## 2. Summary

### Extrinsic fraud

Extrinsic fraud *perpetrates an abuse of judicial process by preventing an adversarial trial and/or impacting the jurisdiction of the court.* Fraud prevents an adversarial trial when it keeps a party ignorant of the action and prevents them from presenting their case, as in *Wells v. Wells*, 168 Md. App. 382, 399-99 (2006) and *Hinden v. Hinden,* 184 Md. 575, 583 (1945); or, as in *Fleisher v. Fleisher Co.*, 60 Md. App. 565, 571 (1984), the fraud prevents the actual dispute from being submitted to the fact finder at all. Extrinsic fraud can involve a false promise of compromise*,* or an attorney who fraudulently or without authority assumes to represent a party and connives at their defeat, s*ee United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878). Of course, only an "intentionally deceptive artifice" can reach the level of extrinsic fraud. *Schwartz v. Merchant's Mortg. Co*, 272 Md. 305, 308 (1974); *see also Payne v. Payne,* 97 Md. 678, 684-685 (1903).

Extrinsic fraud is normally *collateral to the issues tried in the case in which the judgment is rendered.* A court will not reopen a judgment because a party discovers fraud that took place during the trial or was contained within the trial, as, for example, the alleged conspiracy to commit perjury in *Schwartz*, 272 Md. at 309 and *Tabeling v. Tabeling*, 157 Md. 429, 434-435 (1929). Even when no trial has been held, if the fraud could have been discovered at trial, it is unlikely to be considered extrinsic. *See Pelletier v. Burson*, 213 Md. App. 284, 291 (2013); *Hresko v. Hresko*, 83 Md. App. 228, 236 (1990).

43

Extrinsic fraud that impacts a court's jurisdiction must be fraud that either permits or prevents the court's "*procurement of the judgment*," as opposed to fraud that is "*attendant upon the cause of action itself.*" *Mueller v. Payn*, 30 Md. App. 377, 389 (1976). For example, although *Mueller* did not involve the court's revisory power, in deciding whether to credit a judgment under the Full Faith and Credit clause, the case demonstrates the distinction between intrinsic and extrinsic fraud. *Id*. at 388-389. In *Mueller,* in response to a declaration filed in Maryland seeking enforcement of a Missouri judgment, appellants claimed that the Missouri court lacked personal and subject matter jurisdiction and that the judgment was obtained by fraud. *Id*. at 379. Specifically, appellees alleged misrepresentations in the formation of the underlying contract at issue in that case. *Id.* at 388-389. We held that the alleged fraud was intrinsic and not extrinsic because appellants' claim of fraud related to the formation of the contract between appellants and appellee and "not to the obtaining of the judgment." *Id*. at 388.

In another example, involving the court's revisory power, the divorce decree in *Hinden v. Hinden* was vacated because the husband fraudulently obtained jurisdiction over his wife in a Maryland court after intentionally failing to serve her at the correct address. 184 Md. 575, 583 (1945). The Court of Appeals explained that the trial court's exercise of revisory power was appropriate in this circumstance, because the husband "not only did not give the [wife] knowledge of the attempted exercise of jurisdiction by the [c]ourt and an opportunity to be heard, but by deliberately falsifying the address stated in the bill of complaint he allegedly perpetrated a fraud upon both the [wife] and the [c]ourt." *Id.*

44

**Intrinsic fraud**

Intrinsic fraud *relates to facts that were before the court in the original suit and could have been raised or exposed at the trial level*.  If a party could have discovered the fraud, but "by reason of its own neglect" it failed to exercise the "care in the preparation of the case as was required of it," the fraud will be intrinsic.  *Md. Steel Co. of Sparrows Point v. Marney*, 91 Md. 360, 371 (1900); *see also Schwartz*, 272 Md. at 309; *Tabeling*, 157 Md. at 434-435.  A trial offers "the forum for the truth to appear," and its purpose is to assess the truth or falsity of the documents presented.  *Schwartz,* 272 Md. at 309.   Thus, committing perjury and concealing assets normally qualify as acts of intrinsic rather than extrinsic fraud.  *Throckmorton*, 98 U.S. at 65-66; *Schwartz,* 272 Md. at 309; *Hresko*, 83 Md. App. at 235.  Fraudulent or forged documents that were contained within or could have been addressed at trial—such as the contract in *Mueller*, 30 Md. App. at 389; the separation agreement in *Hresko*, 83 Md. App. at 236; and the affidavits in *Pelletier*, 213 Md. App. at 29—are normally considered intrinsic to the original suit.  *Cf. Oxendine*, 172 Md. App. at 494 ("The Full Faith and Credit Clause does not obligate Maryland to enforce a foreign judgment based upon a forged document if the only basis for the foreign court's jurisdiction was the forged signatures of Maryland residents.").

The foregoing precepts, drawn largely from Maryland precedent, are guidelines to navigate the often-subtle calculus involved in differentiating extrinsic from intrinsic fraud.  Our caselaw establishes that "extrinsic fraud" is defined narrowly and evinces a "strong public policy favoring finality and conclusiveness of judgments." *Bland*, 177 Md. App. at 350.  We observe that fairness and the passage of time may not distil into identifiable

45

precepts but clearly play a role in the analysis. For instance, in *Das v. Das*, notwithstanding that the alleged fraud involved the wife's failure to serve husband at his current address and, allegedly, prevented him from presenting his case, we held that husband "fail[ed] to establish extrinsic fraud by clear and convincing evidence" after determining that "[h]usband's own failure to keep the court enlightened of his address and his actions to evade the custody orders of the court below caused his misfortunes." 133 Md. App. 1, 19-20 (2000)*; see also Marney*, 91 Md. at 370 ("The party seeking relief must show that the fraud . . . is 'unmixed with any fault or negligence in himself.'").

### 3. Analysis

We hold that the circuit court did not err in determining that the fraud in this case was intrinsic and not extrinsic for three reasons: 1) it did not prevent an adversarial trial; 2) it pertained to facts contained within the original motions hearing; and 3) it did not impact the jurisdiction of the court.

First, the fraudulent and forged Power of Attorney did not prevent Roberto "from exhibiting fully his case," or "keep[] him away from court." *Throckmorton*, 98 U.S. at 65. As the trial court observed, the Power of Attorney "did not foreclose [Roberto] to contest the underlying obligation of the payment in settlement of the parties' divorce."

This case is readily distinguishable from those cases in which our courts have found that extrinsic fraud prevented an adversarial trial. In *Hinden*, the husband fraudulently kept his wife from answering his complaint for divorce by intentionally sending notice of the action to the incorrect address. 184 Md. at 575, 576. The Court of Appeals determined that, if proven, the alleged fraud was sufficient to reopen the judgment because the

46

husband's fraud removed the wife's opportunity to be heard and led to an ex-parte decree against her. *Id.* at 583. Similarly, in *Fleisher*, Martin, acting as attorney-in-fact to his brother Max, executed two promissory notes for his own benefit against Max's corporations; filed the notes and entered confessed judgment against Max; served process on himself as Max's agent; and failed to raise any defenses to these notes on Max's behalf. 60 Md. App. at 572. The *Fleisher* Court found extrinsic fraud because Martin fraudulently concealed his actions by serving as both plaintiff and defendant in these cases, and his actions prevented anyone from challenging the judgments before they were entered. *Id.*

Contrastingly, in the case at bar, Roberto was clearly aware of the entry of the confessed judgment against him. Like the wife in *Hinden v. Hinden*, Esther moved to set aside the original divorce decree, averring that it had been granted without her knowledge. 184 Md. 575, 576 (1945). Then Roberto entered into the settlement agreement and the 2006 Note in favor of Esther in the amount of $75,000, on which she later obtained the 2011 Judgment that Roberto now seeks, for the second time, to reopen and revoke. Roberto was given ample opportunity to present his case, which was submitted to a fact-finder during the November 2011 hearing on his "Motion to Open, Modify, or Vacate," filed within 30 days of the entry of the 2011 Judgment. He was also represented by independent counsel during that motions hearing. *See Schneider v. Schneider*, 35 Md. App. 230, 239 (1977) (holding that perjured testimony at trial did not constitute extrinsic fraud, especially when both parties had independent counsel during the creation of their separation agreement and subsequent divorce). Unlike the fraud present in *Fleisher* and *Hinden*, then, we hold that the forged Power of Attorney did not prevent an adversarial trial in this case.

47

Second, the Power of Attorney was not collateral to the entry of the confessed judgment or the issues tried in the motions hearing. Rather, the Power of Attorney was before the court in the motions hearing and simply facilitated Esther's ability, through her daughter, to enforce her rights under the 2006 Note in the underlying divorce action. Accordingly, like the fraudulent grant in *Throckmorton*, 98 U.S. at 65, the contractual misrepresentations in *Mueller,* 30 Md. App. at 388, and the affidavits in *Pelletier*, 213 Md. App. at 291, the Power of Attorney was contained within the trial, and its fraudulent nature could have been exposed during the motions hearing.

As we have explained, a trial offers "the forum for the truth to appear," and its purpose is to assess the truth or falsity of the documents presented. *Schwartz,* 272 Md. at 309. If a party makes an intentionally false statement in a pleading that is not discovered at trial, Maryland law indicates that, usually, this "would not constitute extrinsic fraud and [] proof of such fraud will not suffice to set aside an enrolled judgment." *Green v. Ford Motor Credit Co*., 152 Md. App. 32, 49 (2003). Here, the forged Power of Attorney was attached to the complaint, and the forgery was apparent on the face of the document. Unfortunately for Roberto, he failed to notice the forgery before the final judgment was enrolled. The forgery pertained to facts contained within the original motions hearing and therefore constituted fraud that was intrinsic to the 2011 hearing. Although refusing to vacate a judgment based on a forged power of attorney may create a "most grievous [wrong]," public policy in Maryland favors finality and requires that there be an end to litigation. *Marney*, 91 Md. at 375 (quoting *Pico*, 91 Cal. at 134). Accordingly, we hold that because the Power of Attorney was before the court and pertained to facts contained

48

within the original motions hearing, the fraud was not collateral to the entry of the confessed judgment and did not constitute extrinsic fraud.

Third, the Power of Attorney did not fraudulently confer jurisdiction in the circuit court over the confessed judgment action. Roberto alleges that "the fraudulently procured [P]ower of [A]ttorney was used not as a mechanism to defeat a defense of [Esther] or to establish the validity of [her] claim, but was used solely to invoke the standing of . . . Soralla[] to file the case on her mother's behalf. Absent that act of fraud, no lawsuit could have been filed." We disagree.

Maryland law is well settled that "the jurisdiction of an equity or divorce court, once acquired, continues until all matters in litigation are finally disposed of." *Brewster v. Brewster*, 207 Md. 193, 199 (1955); *see also Boucher v. Shomber,* 65 Md. App. 470, 477-479 (1985) (holding that, when a court awarded the wife a sum to pay for her daughter's college expenses, the court was not improperly holding husband in contempt for failing to pay these expenses; rather, it retained jurisdiction over the divorce action and was properly determining the relative rights and obligations of the parties under their separation agreement). In other words, the court

> may modify its judgment in continuing jurisdiction cases. Under the doctrine of continuing jurisdiction, if the court obtains original personal jurisdiction over a party, the jurisdiction continues throughout all subsequent proceedings that arise out of the original cause of action, even beyond judgment.

Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 754 (4th ed. 2019). This rule applies to matters including "traditional equity cases involving alimony, custody, child support, injunctions and continuing equity supervision." *Id.*

49

Here, even though the Power of Attorney was forged, the court already had continuing subject matter jurisdiction over Esther and Roberto's claims in the divorce case, and there is no dispute that the court had personal jurisdiction over Esther and Roberto. The 2006 Note was executed as part of the parties' divorce settlement. By entering the 2011 Judgment, "the court was simply retaining its jurisdiction in furtherance of its power and duty to enforce the rights of the parties under its earlier decree." *Boucher*, 65 Md. App. at 479. Here, just as in *Finch III*, 463 Md. 586, 611 (2019), even though Soralla had "no legal authority to file" the complaint for confessed judgment on Esther's behalf, the circuit court nevertheless had fundamental jurisdiction over the action. Accordingly, we conclude that the fraudulent Power of Attorney did not impact the jurisdiction of the court.

In closing, we hold that the trial court correctly determined that the fraudulent and forged and Power of Attorney did not constitute extrinsic fraud in the context of the underlying confessed judgment action, and therefore, the court did not abuse its discretion in refusing to vacate its previous judgment.

## B. Mistake

Before turning to the question of whether the judgment entered in a proceeding brought under a forged Power of Attorney constituted a "mistake" as contemplated by Maryland Rule 2-535(b), we note that Esther asserts that we should not consider the issue because Roberto is raising it for the first time on appeal. The record reveals, however, that, although the trial court did not rule on this issue, Roberto raised it in his "Memorandum of Law in support of his Motion to Vacate and Dismiss Case" filed in the circuit court. Regardless, "mistake," as contemplated by Maryland Rule 2-535(b), means jurisdictional

50

mistake, such as where the court lacks the power to enter the judgment because it does not have jurisdiction over the person or jurisdiction over the subject matter. *Claibourne v. Willis*, 347 Md. 684, 692 (1997); *see also Thacker v. Hale*, 146 Md. App. 203, 224 (2002). It is well established that the "issue of subject matter jurisdiction need not be raised by a party, but may be raised by a court, sua sponte, at any time." *Lewis v. Murshid*, 147 Md. App. 199, 202-203 (2002)*, see also Misveth v. Aelion,* 235 Md. App. 250, 256 (2017). Accordingly, we will consider Roberto's allegation of mistake, but only briefly, given that Roberto now concedes that the trial court had fundamental jurisdiction to enter the judgment.

Indeed, Roberto admits that no jurisdictional mistake plagues the 2011 Judgment by conceding that it is not void because the circuit court had fundamental jurisdiction to enter it. As we just observed, it is "well settled that 'mistake,' as used in Rule 2-535(b), is limited to a jurisdictional error, such as where the Court lacks the power to enter the judgment." *Claibourne*, 347 Md. at 692. "The typical kind of mistake occurs when a judgment has been entered in the absence of valid service of process; hence, the court never obtains personal jurisdiction over a party." *Id*. (quoting *Tandra S. v. Tyrone W*., 336 Md. 303, 317 (1994), *superseded by statute on other grounds* 1995 Md Laws, ch. 248 (H.B. 337), *as recognized in Tyrone W. v. Danielle R*., 129 Md. App. 260, 275-286 (1999)). "[T]he concept of 'jurisdiction' has two distinct meanings.

> Juridically, jurisdiction refers to two quite distinct concepts: (i) the power of a court to render a valid decree, and (ii) the propriety of granting the relief sought. To ascertain whether a court has power, it is necessary to consult the Constitution of the State and the applicable statutes. These usually concern two aspects: (a) jurisdiction over the person—obtained

by proper service of process—and (b) jurisdiction over the subject matter—the cause of action and the relief sought.

*Thacker v. Hale*, 146 Md. App. 203, 224 (2002).

Here, there is no question that the circuit court had personal jurisdiction over Roberto, who is a Maryland resident and was properly served with process. *Chapman,* 356 Md. at 436; *Peay v. Barnett,* 236 Md. App. 306, 322 (2018). Further, as we reviewed in our earlier discussion on the intrinsic nature of the fraud in this case, Maryland statutes and rules clearly convey the court's subject matter jurisdiction over the entry of the Confession of Judgment. Accordingly, there was no jurisdictional mistake in this case.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**